Allen, J.
 

 This case has already been before this court in
 
 Fulton
 
 ,
 
 Supt. of Banks,
 
 v.
 
 B. R. Baker-Toledo Co.,
 
 125 Ohio St., 518, 182 N. E., 513, upon the question whether the draft owned by The B. R. Baker-Toledo Company constituted a preferred claim under the provisions of Section 713, General Code, and was entitled to a preference on all the assets of the bank. In that case the court held that the draft in question did constitute a preferred claim, and thereupon the superintendent of banks paid the principal amount of the claim without prejudice. The preferred creditor then amended his petition so as to claim interest, and the Court of Common Pleas and the Court of Appeals of Lucas county adjudged that the creditor was entitled to such interest.
 

 The trial court in the instant controversy held that under Section 8305, General Code, the preferred creditor was entitled to interest in priority to payment to general creditors, and the Court of Appeals affirmed that judgment.
 

 Section 8305, General Code, so far as applicable to this case, reads as follows:
 

 “When money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * the creditor shall be entitled to interest at the rate of six per cent per annum, and no more.”
 

 Unless the preferred creditor is entitled to interest under this section, he is not entitled to interest at all
 
 *228
 
 under this record, for the statutes relative to preferred claims in the liquidation of banks make no provision whatever with reference to interest.
 

 We differ from the conclusion of the Court of Appeals that interest is allowable here.’ It is true that Section 8305, G-eneral Code, applies to. bonds, bills, notes, or other instruments of writing, and therefore applies to a draft.
 

 But interest is a compensation paid for the use of money. It may be compensation allowed by law or fixed by the parties. 33 Corpus Juris, 178.
 

 When the money is not used by the debtor, there is authority of weight to the effect that compensation cannot be collected. Thus, “Where a company in the hands of a receiver was without power to pay interest on its bonds without order of court for which the creditor never applied, on discharge of the receivership, the enforced delay has not conferred on either party any advantage over the other, and interest cannot be collected on installments of interest coming due during the receivership and not paid until its discharge.” 33 Corpus Juris, 246, Section 156, citing
 
 Boston Penny Savings Bank
 
 v.
 
 Boston & Maine Rd. Co.,
 
 244 Mass., 488, 138 N. E., 907.
 

 “Where a debtor is restrained by an injunction from using money in his hands, or from paying the same to his creditor, he will not generally be chargeable with interest thereon while the injunction is in force.” 33 Corpus Juris, 246, Section 157.
 

 Decisions are cited to this effect in 33 Corpus Juris, 246, under note 75, from the United States Supreme Court, and from California, Connecticut, Delaware, Maryland, Massachusetts, New Jersey, New York, Pennsylvania and England. See, also,
 
 Redfield, Exrx.,
 
 v.
 
 Ystalyfera Iron Co.,
 
 110 U. S., 174, 28 L. Ed.,
 
 *229
 
 109, 3 S. Ct., 570; Anderson’s Law Dictionary, 563; Black’s Law Dictionary, 647.
 

 As defined in 2 Bonvier (Rawle’s 3d Ed.), 1642, interest on debts is “Tbe compensation wbicb is paid by tbe borrower of money to tbe lender for its nse, and, generally, by a debtor to bis creditor in recompense for bis detention of tbe debt.”
 

 Tbe debtor in tbis case did not detain tbe money. Tbe state of Ohio detained it. Moreover, after tbe superintendent of banks, under tbe Code, bas taken over a bank for tbe purposes of liquidation, tbe bank, tbe debtor, bas no use of tbe money. It is true that tbe preferred creditor also bas no use of tbe money, but tbe same thing is true of every general creditor of tbe bank, such as depositors in savings accounts or under time deposits. They are usually paid interest for tbe use of sucb money. They also have no use of their money when tbe bank is insolvent, and they secure no compensation for being deprived of sucb use.
 

 For tbis reason and also since there is no provision in Sections 711, 712, 713 or 714, General Code, for the allowance of interest upon preferred claims, we conclude that tbe Court of Appeals erred in its judgment as to interest.
 

 'The attorney general vigorously contends that tbe ruling of tbis court in tbe case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 B. R. Baker-Toledo Co.,
 
 125 Ohio St., 518, 182 N. E., 513, establishing a preference in tbe amount of drafts purchased by a depositor in sucb failed bank by sucb depositor issuing and delivering to the-failed bank a check against his own account in sucb failed bank, was erroneous. He asks tbis court now to overrule the decision in that ease.
 

 We proceed to inquire whether tbe construction given to Section 713, General Code, in
 
 Fulton, Supt. of Banks,
 
 v.
 
 B. R. Baker-Toledo Co.,
 
 125 Ohio St., 518, 182 N. E., 513, was correct. We start with tbe proposition that statutes in derogation of tbe common
 
 *230
 
 law should be strictly construed. Sedgwick on Statutory and Constitutional Construction, 266; 2 Sutherland on Statutory Construction (Lewis’ 2d Ed.), 862, Section 454 ; 25 Euling Case Law, 1056, Section 281; 7 L. R. A. Digest, 8943, Section 268, note
 
 a,
 
 and cases cited.
 

 It is conceded that the preference created in 125 Ohio St., 518, 182 N. E., 513, does not exist at common law. It is also conceded that Sections 711 to 714, inclusive, General Code, are in derogation of the common law. They therefore should be strictly, and not liberally, construed. Also these sections were enacted at the same time and as a part of the same statute. They deal with the same subject, and therefore are
 
 in pari materia,
 
 and should be construed together.
 
 State, ex rel. Bettman, Atty. Genl.,
 
 v.
 
 Christen, ante,
 
 56, 190 N. E., 233;
 
 DeWitt
 
 v.
 
 State, ex rel. Crabbe, Atty. Genl.,
 
 108 Ohio St., 513, 141 N. E. 551.
 

 In their latest form, these sections read as follows:
 

 Section 711. “That when any bank incorporated under the laws of this state or any unincorporated bank transacting business in this state shall have presented to it for collection and payment any check drawn upon it by a depositor in such bank or unincorporated bank, who at the time such check is presented for collection and payment has on deposit an amount equal to such check, if before such check is charged to such depositor’s account, such bank or unincorporated bank shall be closed for business by the superintendent of banks of Ohio or by action of its board of directors or by other proper legal action, the superintendent of banks of Ohio or any one who shall at or after the closing of such bank be legally authorized to take charge of the liquidation thereof, shall upon taking charge of the affairs of such closed bank return such check to the person or banking institution by which it was presented to such closed bank for collection and payment. ”
 

 Section 712. “In any case where any hank incor
 
 *231
 
 porated under the laws of this state or any unincorporated bank doing business in this state, shall have had presented to it for collection and payment a check drawn by a depositor in such bank or unincorporated bank who at the time of the presentation thereof for collection and payment has on deposit a sum equal to the amount óf such check, if such bank or unincorporated bank shall charge to the account of such depositor the amount of such check but shall thereafter be closed for business by the superintendent of banks of Ohio or by action of its board of directors or by any other proper legal action before payment shall have been made of such check, the charging of such check to such depositor’s account shall constitute an appropriation by such bank or unincorporated bank of the assets of such bank or unincorporated bank to the payment thereof and shall impress such assets with a trust in behalf of the owner of such check and entitle such owner to payment thereof upon liquidation of the assets of such failed bank as a preferred.claim.”
 

 Section 713. “In any case where any bank incorporated under the laws of this state or any unincorporated bank doing business within this state shall have presented to it for collection and payment, a check drawn by a depositor in such bank or unincorporated bank who at the time such check is presented to it for collection and payment has on deposit an amount equal to such check, if after the receipt thereof such bank or unincorporated bank shall charge the account of such depositor with the amount thereof and shall in payment thereof draw a draft upon another banking institution, which draft shall remain unpaid at the time that such bank drawing same is closed by the superintendent of banks of Ohio or by action of its board of directors or other proper legal action, in such event the assets of such closed bank shall be impressed with a trust for the payment of such draft, and the superintendent of banks of Ohio or any one
 
 *232
 
 legally charged with the liquidation of such closed bank, shall pay such draft as a preferred claim out of the assets of such failed bank.”
 

 Section 714. “In any case where any bank incorporated under the laws of this state or any unincorporated bank doing business within this state, shall have in its possession the proceeds realized from the collection of any negotiable instrument by it or by any other collecting agency, at the time that such bank is closed by the superintendent of banks of Ohio or by action of its board of directors or by any other proper legal action, or in any case where any such bank shall in payment of such proceeds of collection draw a draft upon another banking institution which draft shall remain unpaid at the time such bank drawing same is closed, as aforesaid, the assets of such bank so closed shall be impressed with a trust in behalf of the owner of the negotiable instrument the proceeds of which are held by such bank so closed or payment of such proceeds has been attempted by such bank so closed by drawing a draft as aforesaid, and the owner of the negotiable instrument shall be entitled to payment upon liquidation of the assets of such bank as a preferred claim. ”
 

 Reading the sections together, they indicate upon their face that they refer to collection items sent to a drawee bank by a payee or endorsee. It requires inference and implication to make these sections cover the situation where a depositor presents his own check to his own bank and purchases therewith a draft.
 

 It is significant, for example, that Section 711 does relate to the situation where checks are sent “for collection,” and requires the return of the check when the bank fails, prior to the time that the account of the depositor is charged with the amount of the cheek. It is true that this section also contains the phrase, “collection and payment.” But what other purpose does any collection serve except that of payment?
 

 
 *233
 
 Section 712 grants a.preference to the holder of the check if the account of the depositor has been charged in the amount of such check before the bank is closed for business. There is nothing in this section to indicate that the enactment considered as a whole relates to anything but collection items.
 

 Section 714, which has been considered'in the case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 Rundell, ante,
 
 205, this day decided, speaks specifically of “the proceeds realized from the collection of any negotiable instrument.”
 

 “A reading of all four sections makes wholly clear what seems clear from reading Section 713 alone, that the Legislature was dealing with a common problem arising when checks are sent by holders thereof to the banks upon which they are drawn for ‘collection and remittances.’ ” 31 Michigan Law Review, 843.
 

 In ordinary banking parlance, the transaction of transmitting paper for collection is not considered to be the same as the act of purchasing a draft through check drawn by the depositor upon his own bank. Construing the sections strictly, then, they do apply to collection items only, and do not establish a preference where at the common law there was only a debtor-creditor relationship.
 

 It is stated in the opinion in 125 Ohio St., 518, that “It must be presumed that the Legislature did not merely intend to declare a well-settled principle, but that its purpose was to remove a difficulty theretofore existing by making a change in the well-settled rule.” The opinion then stated that the words “collection and payment” covered “every instance where a draft is purchased by a depositor by issuing and delivering to the bank a check against his own account, whether in the checking account, or a savings account.” However it cannot be disputed that under the common law such a purchase of a draft creates only a debtor-creditoi
 
 *234
 
 relationship. Furthermore, giving the sections a narrow construction, they remove a difficulty theretofore existing by making a change in the rules of the common law as follows:
 

 At common law, a trust
 
 res
 
 is not created by charging a depositor’s credit balance with the amount of his check. Section 712 changes this situation.
 

 At common law, where a trust
 
 res
 
 exists it must in general be identified or traced before there may be a recovery. Under these statutes, in the specific cases covered by them, the necessity of tracing trust funds is eliminated.
 

 At common law, if the trust fund be traced into some other fund, the amount recoverable is limited to the lowest amount subsequently appearing in the commingled fund.
 

 By these statutes the trust impressed is payable from the general assets of the bank.
 

 We think these changes in the common law rules establish ample grounds for the enactment. They do remove difficulties theretofore existing under the common law. But reading these statutes together, bearing in mind that they are in derogation of the common law, we think the court was in error in the case of
 
 Fulton, Supt. of Banks,
 
 v.
 
 B. R. Baker-Toledo Co.,
 
 125 Ohio St., 518, 182 N. E., 513, in giving so liberal a construction as to hold that the ordinary purchase of a draft from the depositor’s bank by the depositor’s issuing a check against his own account, whether checking or savings, constitutes “collection and payment” within the meaning of the act.
 

 Entertaining these views, we overrule the doctrine announced in the three paragraphs of the syllabus of
 
 Fulton, Supt. of Banks,
 
 v.
 
 B. R. Baker-Toledo Co.,
 
 125 Ohio St., 518, 182 N. E., 513.
 

 The judgment of the Court of Appeals will be re
 
 *235
 
 versed, and'judgment will be rendered for tbe plaintiff in error.
 

 Judgment reversed a/nd judgment for plaintiff in error.
 

 Weygandt, C. J., Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.